Accessory Fashions Ltd., Inc. v. Commissioner. Raymond Glassheim v. Commissioner.
Accessory Fashions, Ltd. v. Commissioner
Docket Nos. 5446-64, 5447-64.
United States Tax Court
T.C. Memo 1967-108; 1967 Tax Ct. Memo LEXIS 154; 26 T.C.M. (CCH) 507; T.C.M. (RIA) 67108; May 12, 1967
Martin M. Lore, for the petitioners. Agatha L. Vorsanger, for the respondent. MULRONEY Memorandum Findings of Fact and Opinion MULRONEY, Judge: Respondent determined a deficiency in the income tax of Accessory Fashions Ltd., Inc. for the fiscal year ended August 31, 1959 in the amount of $4,846.02, and he determined that the corporation had a net operating loss in the fiscal year ended August 31, 1960 in the amount of $3,041.85 instead of $17,855.95, which was the amount of the net operating loss reported by the corporation in its return for that fiscal year. (Docket No. 5446-64.) Respondent determined a deficiency in the income tax of Raymond Glassheim for the year 1959 in the amount of $6,742.04. (Docket No. 5447-64.) Concessions have been made by both parties with respect to several *155 of the issues. The remaining issues are (1) whether the corporate petitioner is entitled to deduct as ordinary and necessary business expenses in the fiscal years ended August 31, 1959 and 1960 a portion of the rent for the apartment occupied by the corporation's sole stockholder; (2) whether the corporate petitioner is entitled to deduct as ordinary and necessary business expenses in the fiscal years ended August 31, 1959 and 1960 expenses incurred in the operation of a boat; (3) whether respondent properly disallowed a business expense deduction by the corporate petitioner for expenditures incurred on an European trip made by Raymond Glassheim (the sole stockholder of the corporation) and another corporate employee in the fiscal year ended August 31, 1960; and (4) whether any portion of the disallowed corporate expenditures is properly includable in the income of Raymond Glassheim for the year 1959 as constructive dividends. Findings of Fact Some of the facts were stipulated and they are so found. Accessory Fashions Ltd., Inc. is a corporation organized under the laws of the State of New York. Its principal place of business was in New York, N. Y. It filed its Federal income *156 tax returns for the fiscal years ended August 31, 1959 and August 31, 1960 with the district director of internal revenue, Manhattan, New York. Raymond Glassheim, a resident of New York, New York, filed his Federal income tax return for 1959 with the district director of internal revenue, Manhattan, New York. Raymond Glassheim owned all of the outstanding stock of the corporation. Accessory Fashions Ltd., Inc. (hereinafter called Accessory Fashions) was organized in 1939 and was engaged in the business of manufacturing, importing and jobbing women's hats. Its general method of operations was to purchase raw materials and then have various people manufacture the hats in accordance with the designs and samples furnished by Accessory Fashions, which then sold the manufactured hats to department stores on a guaranteed sales basis, i.e., a department store unable to sell the merchandise was entitled to an exchange or a refund. Accessory Fashions was allocated space in the various department stores and furnished all or part of the sales personnel. Since 1956 Accessory Fashions' factory was located in a loft building at 57 East 11th Street in New York City where the corporation employed *157 some 30 or 40 employees who included both office and factory personnel. Access to the factory loft was by a manually operated freight elevator. The monthly rental for the factory loft was approximately $420. On February 18, 1956, Accessory Fashions signed a lease for a duplex apartment with terrace on the upper floors of a new apartment building located at 63 East 9th Street, about two blocks from the factory. The apartment building was zoned for residential use only. In an application for the lease of the apartment signed by Glassheim he stated that the apartment would be occupied strictly as a private dwelling by himself and by Herbert E. Balne, Jr. The lease was for a term of 53 months beginning on May 1, 1956. The upper floor of the duplex apartment consisted of a bedroom, a bathroom and a terrace, while the lower floor consisted of one large room and one small one, a kitchenette and a bathroom. The maid slept in the small room on the lower floor. Prior to moving into the apartment in 1956, alterations were made at a cost of approximately $250. A dividing wall was removed on the lower floor so that areas originally designated as a bedroom and a living room became one large *158 room, and some closets were removed. In addition, a dividing wall was inserted to turn the area originally designated as an alcove into the small room used by the maid. Early in 1960 a 20-foot wall closet was added to the large room on the lower floor. The monthly rental for the duplex apartment was $345, which was allocated as follows: $255 for the business use of Accessory Fashions and $90 for the personal use of Glassheim. In its corporation income tax returns for the fiscal years ended August 31, 1959 and 1960, Accessory Fashions claimed its allocated share of the apartment rental in each fiscal year as a business expense in the amount of $3,060. Respondent disallowed this deduction claimed by the corporation and included the amount of $3,060 in Glassheim's income in 1959 as a constructive dividend. On December 16, 1959, Glassheim and Herbert E. Balne, Jr., who was employed by Accessory Fashions as a designer, started on a 17-day European trip. It was Glassheim's first trip to Europe. Glassheim and Balne arrived in London on December 17, where they contacted one Lionel Crane who was unable to introduce them to any English manufacturers, as intended, but suggested one Leslie *159 Wain in Milan who could introduce Glassheim and Balne to Italian manufacturers. While in London, Glassheim and Balne visited several department stores and purchased some hats in these stores. Glassheim and Balne arrived in Milan on December 19 and there discussed with Leslie Wain the possibility of appointing him as their exclusive agent in Italy. Glassheim and Balne visited department stores in Milan and bought several hats. On December 21 they arrived in Florence, accompanied by Leslie Wain, who introduced them to at least seven manufacturers located within 40 or 50 miles of Florence. Glassheim and Balne selected two of the manufacturers, Castri and Stefanini, and worked with them during the remainder of their stay in Florence to design and style a line of hats. On December 24 Glassheim and Balne arrived in Rome where they met one Madame Lauria who had been a contractor of Accessory Fashions in the United States. On the next day, December 25, they accompanied Madame Lauria to Naples where she had her home and factory. Glassheim and Balne returned to Rome on the same day and for the remainder of their stay in that city they visited department stores, bought hats and visited the *160 Coliseum and the Vatican. On December 28 they returned to Florence where they inspected samples prepared for them by the manufacturers and left orders with the manufacturers. On December 30 they returned to Milan where they made arrangements with Leslie Wain to have him inspect completed orders before shipment to the United States and to otherwise facilitate shipments. On December 31 Glassheim and Balne arrived in Paris where they met a showroom employee of Christian Dior and purchased three hats from her after inspecting some samples. They returned to New York on January 3, 1960. Accessory Fashions incurred the following expenses for the European trip: Air transportation
$2,048.40
Jet surcharges
80.00
Hotels, transfers, rail tickets
1,140.00
Cables for hotel reservations
16.39
Traveler's checks
2,015.00
$5,299.79 Glassheim and Balne also brought with them $200 or $300 in cash and they returned from Europe with about $150 to $200. On its corporation income tax return for the fiscal year ended August 31, 1960, Accessory Fashions claimed a business deduction in the amount of $7,411.23 which it identified as "Demonstrators Expenses". This total included *161 the cost of the European trip in the amount of $5,299.79. Respondent disallowed $3,499.20 of the total claimed European expenses on the ground that they did not represent ordinary and necessary business expenses of the corporation. Respondent allowed a deduction of $1,800.59 mostly for Balne's European expenses on the ground that they represented additional compensation to him as an employee of the corporation. Respondent allowed $166.39 (out of the total amount allowed) for Glassheim's expenditures in Florence. [1]
Respondent also determined that one-third of the $3,499.20 disallowed as a business deduction in the fiscal year ended August 31, 1960 by Accessory Fashions for the European trip was includable in Glassheim's income for 1959 as a constructive dividend. [2]
In February 1958 Accessory Fashions purchased a boat for $18,137.43 and sold it in *162 July or August of 1960. The boat was not used during the summer of 1960. Accessory Fashions had also purchased a boat in 1957 which sank after a mishap while Glassheim was operating it. Glassheim subsequently took some boating lessons at a Coast Guard school. Accessory Fashions claimed business expense deductions in connection with the boat in the fiscal years ended August 31, 1959 and 1960 in the respective amounts of $5,696.33 and $3,202. The boat was listed in the depreciation schedules of the tax returns for both fiscal years as "Equipment". Respondent disallowed the boat expense deductions in full in both fiscal years. Respondent also determined that two-thirds of the disallowed boat expense deduction claimed by Accessory Fashions in the fiscal year ended August 31, 1959 (2/3 of $5,696.33) and one-third of the disallowed boat expense deduction claimed by the corporation in the fiscal year ended August 31, 1960 (1/3 of $3,202) was includable in Glassheim's income for 1959 as a constructive dividend in the total amount of $4,864.88. Opinion The first issue is whether any portion of the disallowed European trip expense deduction claimed by Accessory Fashions in its fiscal *163 year ended August 31, 1960 is deductible as an ordinary and necessary business expense under section 162 of the 1954 I.R.C. The corporation claimed a deduction for the 17-day European trip taken by Glassheim and Balne in the amount of $5,299.79. Respondent allowed $1,800.59, most of it for Balne's expenses on the trip. Only $166.39 was allowed by respondent as a corporate business expense for Glassheim's expenditures on the trip. We are convinced that the European trip was undertaken by the two men predominantly for business reasons. Glassheim's testimony, which was partially corroborated by other independent evidence, was explicit in nature. He testified that he undertook this trip with the designer employed by Accessory Fashions to make business contacts abroad with the purpose of importing foreign trade millinery products. They made efforts to visit foreign manufacturers and actually contacted at least seven manufacturers in the vicinity of Florence. Glassheim and Balne selected two of these manufacturers (Stefanini and Castri) and spent some time with them designing and styling a line of hats. There are numerous invoices in evidence showing a considerable *164 volume of business conducted by Accessory Fashions with the Italian manufacturers Stefanini and Castri. Also, it appears that Glassheim and Balne after leaving Florence and Milan for a few days in Rome and Naples, returned to Florence to inspect samples prepared by Stefanini and Castri and then returned to Milan where they appointed one Leslie Wain as a kind of resident inspector for goods to be shipped to Accessory Fashions. Glassheim and Balne also made it their practice to visit several department stores in the various cities visited by them to inspect sales and counter arrangements and purchase sample hats. The evidence also suggests that some of the expenditures were personal in nature. They did some sightseeing, visited night clubs and incurred other expenditures whose link to any business purpose would be extremely doubtful. It is apparent that some allocation must be made and, using our best judgment based upon all the evidence, we find, and so hold, that $2,000 for Glassheim's expenses, in addition to the approximately $1,800 already allowed by respondent for Balne's expenses on the European trip was an ordinary and necessary business expense deductible by the corporation. *165 The next issue is whether respondent correctly disallowed a portion of the apartment rental which was deducted by Accessory Fashions as a business expense in each of the fiscal years ended August 31, 1959 and 1960. Accessory Fashions claims that it maintained a showroom on the lower floor of the duplex apartment (with terrace) located on the upper floors of a new apartment building at 63 East 9th Street in New York City, about two blocks from the factory loft. Out of the monthly rental of $345, the amount of $255 was allocated to corporate business expense and $90 to Glassheim for his personal use. We are not persuaded that the apartment was used to any extent for business purposes. The evidence on this issue consists for the most part of Glassheim's self-serving and completely uncorroborated testimony that he frequently entertained buyers and merchandisers at the apartment, that he lived upstairs (one bedroom, bath and a terrace) and that he rarely used the lower floor. However, the evidence shows that this apartment was not only Glassheim's residence but was also used much of the time by Balne, the designer. An application for the apartment signed by Glassheim states that the *166 apartment would be used as a private residence for both men. It strains credulity to accept Glassheim's story that they lived in the upstairs bedroom and completely neglected the lower floor of the duplex apartment. Glassheim testified as to some structural changes made to the apartment before he moved into the apartment. However, all we can glean with any certainty from the record is that these changes cost about $250, indicating that they were not major. In addition, the changes in the lower floor, which seem to have changed a bedroom and a small living room into one large area, are compatible with a desire for a more spacious living area dicated by personal reasons. In addition, the enclosure of a small alcove on the lower floor met the need for a sleeping area to be used by the maid. We find on the basis of this record that the apartment was not used for business purposes during the fiscal years here involved. We sustain respondent on this issue. The next issue is whether Accessory Fashions is entitled to any deduction in the fiscal years ended August 31, 1959 and 1960 of expenses incurred in connection with the boat owned by the corporation. To support the contention that *167 the boat was used exclusively to entertain buyers and merchandisers we have, again, nothing more that Glassheim's uncorroborated and self-serving recitation of a list of names of people who were purportedly entertained on the boat. No log was introduced in evidence. The list of names, prepared by Glassheim and his employees, purported to recall guests on the boat some seven years ago. We are unimpressed with Glassheim's testimony as well as with his facile protestations that he had a "distaste" for boats. Glassheim would have us believe that the corporation paid more than $18,000 for a boat as a "gimmick." Yet it is odd that the boat, which was purchased early in 1958 was not even used during the summer of 1960 and was sold in July or August 1960. The record also shows that the corporation had previously purchased another boat in 1957 which Glassheim managed to sink. It also appears that Glassheim, who operated the boat, was always accompanied on the boat by either Balne or Robinson, both of whom were personal friends as well as employees of the corporation. We are left with a firm conviction from this record that the boat was purchased for the personal uses of Glassheim and that *168 it was so used by him during the years here involved. We are unpersuaded by Glassheim's testimony or by any other evidence in the record that the boat was used to any extent in connection with the business of the corporation. We sustain respondent on this issue. We also sustain respondent in his determinations that the dissallowed corporate expenditures were includable in Glassheim's income for 1959 as constructive dividends. Glassheim was sole stockholder of the corporation. Moreover, it has been stipulated that the earnings and profits of Accessory Fashions were not less than $22,548.62 as of August 31, 1958, $33,755.11 as of August 31, 1959 and $17,103.77 as of August 31, 1960. See section 316 of the 1954 I.R.C. The amount of the constructive dividends will, of course, take into account the concessions of the parties as well as our findings above. We do not agree with respondent that Accessory Fashions, because of a failure of proof, is not entitled to a net operating loss carryback from its fiscal year ended August 31, 1960 to the fiscal year ended August 31, 1959 (after proper adjustments for the two preceding fiscal years). As far as we can tell, all *169 of the necessary information is available to the parties. The corporation's application for a tentative carryback adjustment for the fiscal years ended August 31, 1957, 1958 and 1959 is attached to the statutory notice of deficiency in docket No. 5446-64. The respondent advised Accessory Fashions in his notice of deficiency that "[if] a petition is filed with the Tax Court of the United States against the determination of the Commissioner, the issue raised in your claim for refund should be made a part of the petition filed with the Court." The notice of deficiency also stated that "[if] a petition is not filed, a statutory notice of disallowance will be forwarded to you in accordance with the provisions of section 6532 of the Internal Revenue Code of 1954." The notice of deficiency and the claim for refund are attached to the petition and made parts thereof by paragraphs 2 and 3 of the petition as Exhibits A and B. We can perceive no obstacle under these facts to a proper arithmetical computation of the amount of the net operating loss carryback (if any) to the fiscal year ended August 31, 1959 in the Rule 50 computation. Decision will be entered *170 under Rule 50. Footnotes
1. Respondent does not enlighten us as to his method of reaching these figures.↩
2. Since the corporation was on a fiscal year ending August 31, respondent allocated 4/12 (September through December) of the disallowed corporate expenditures for the trip (December 17, 1959 to January 3, 1960) to Glassheim's taxable year 1959.↩